**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SONY PICTURES HOME ENTERTAINMENT**
**INC. and COLUMBIA PICTURES**
**INDUSTRIES, INC.,**

                                    **Plaintiffs,**

                    **v.**                                              **5:06-CV-227**
                                                                        **(FJS/GJD)**

**JILL CHETNEY,**

                                    **Defendant.**
_____

**ATTORNEYS**                          **OF COUNSEL**

**LOEB & LOEB LLP**                     **ALEXANDRA N. DENEVE, ESQ.**
345 Park Avenue
New York, New York 10154-0037
Attorneys for Plaintiffs

**HISCOCK & BARCLAY LLP**               **RICHARD K. HUGHES, ESQ.**
One Park Place                          **JOHN D. COOK, ESQ.**
300 South State Street
Syracuse, New York 13202-2078
Attorneys for Plaintiffs

**JILL CHETNEY**                        **NO APPEARANCE**
Oswego, New York 13126
Defendant _pro se_

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiffs, two of the world's leading motion picture studios, retained MediaSentry to

combat infringement of their copyrighted motion pictures on peer-to-peer ("P2P") networks. _See_

Declaration of Alexandra N. DeNeve, dated May 19, 2006, at ¶¶ 2-3.  MediaSentry is a company

that provides online antipiracy and copyright protection services to identify direct infringers of Plaintiffs' copyrights on P2P networks. *See id.* at ¶ 3.

MediaSentry searched several P2P networks for infringing copies of Plaintiffs' copyrighted motion pictures. *See id.* at ¶ 4. When MediaSentry located a user offering Plaintiffs' copyrighted works for download, it sought to download those files while obtaining information to confirm the infringement and to identify the infringer. *See id.*

Defendant used a fictitious network name or pseudonym to copy and distribute Plaintiffs' copyrighted works. *See id.* at ¶ 5. Therefore, Plaintiffs initially could only identify Defendant by the unique Internet Protocol ("IP") address that her internet service provider ("ISP"), Time Warner Cable, had assigned to her on the date and at the time of the infringement. *See id.* Based upon this information, Plaintiffs filed a "John Doe" lawsuit against Defendant and others in the Southern District of New York, where Time Warner Cable is located. *See id.*

ISPs keep track of the IP addresses that they assign to their subscribers in "user logs." *See id.* at ¶ 6. These user logs provide the most accurate means to connect an infringer's identity to its infringing activity. *See id.* In their "John Doe" lawsuit, Plaintiffs moved for leave to serve a subpoena on Time Warner Cable seeking Defendant's true identity. *See id.* The court granted the motion and, on August 8, 2005, Plaintiffs served the subpoena. *See id.* In response, Time Warner Cable identified Defendant as the individual using the IP address that MediaSentry had obtained at the time of the infringement. *See id.* at ¶ 7.

According to the information that Time Warner Cable provided, Defendant did not reside in the Southern District of New York. *See id.* at ¶ 8. Therefore, Plaintiffs dismissed that suit against Defendant without prejudice and sought to negotiate an out-of-court settlement with her.

-2-

*See id.*  Defendant refused to settle the dispute.  *See id.*

On February 23, 2006, Plaintiffs filed the complaint in this action to prevent Defendant from copying and distributing to others over the Internet unauthorized copies of certain of Plaintiffs' copyrighted motion pictures and for damages in connection with Defendant's past infringements of these motion pictures.  *See id.* at ¶ 9; Plaintiffs' Memorandum of Law at 1 (citation omitted).  Plaintiffs served Defendant with a copy of the summons and complaint on March 15, 2006.  *See id.* at ¶ 10.  Defendant did not answer or otherwise appear within the statutory period; and, therefore, on April 26, 2006, Plaintiffs sent her a letter advising her that she was in default and that, if she failed to answer, Plaintiffs would seek a default judgment against her.  *See id.* at ¶ 11.  Defendant did not respond to Plaintiffs' letter.  *See id.*  On May 10, 2006, Plaintiffs requested that the Clerk of the Court enter a Notice of Default against Defendant; *see* Dkt. No. 5; and on May 11, 2006, the Clerk of the Court did so, *see* Dkt. No. 6.

Currently before the Court is Plaintiffs' motion for entry of a default judgment against Defendant pursuant to Rule 55 of the Federal Rules of Civil Procedure.  *See* Dkt. No. 7.


## II. DISCUSSION

### A.    Default judgment standard

Rule 55 of the Federal Rules of Civil Procedure provides a two-step procedure for entry of a default judgment.  First, "[u]nder Rule 55(a), a clerk must . . . enter the default against a party who fails to plead or otherwise defend."  *Time Warner Entm't/Advance Newhouse P'ship v. Stockton*, No. 5:00-CV-1989, 2004 WL 1739520, *1 (N.D.N.Y. Aug. 3, 2004) (citing Fed. R. Civ. P. 55(a)).  Second, the plaintiff must "move the court for default judgment."  *Id.* (citation

omitted).  "In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."  *Id.* (citation omitted).  Since, at Plaintiffs' request, the Clerk of the Court entered default against Defendant, Plaintiffs' motion for entry of a default judgment is appropriately before the Court.

In support of their motion, Plaintiffs assert that their complaint sets forth the following facts that establish Defendant's liability for willful copyright infringement: (1) Plaintiffs own the applicable exclusive distribution rights to the following copyrighted motion pictures, *Guess Who* and *Boogeyman*; (2) each of these motion pictures is the subject of a valid Certificate of Copyright Registration that the Register of Copyrights issued; (3) Defendant infringed Plaintiffs' exclusive rights by distributing to others, without authorization, copies of these copyrighted motion pictures by using a P2P network on the Internet; and (4) Defendant's infringement was willful because she either was aware or had reason to be aware that her actions constituted an infringement of Plaintiffs' rights.  *See* Plaintiffs' Memorandum of Law at 1-2.  Based upon these facts, Plaintiffs request statutory damages in the amount of $6,000, a permanent injunction enjoining Defendant from infringing Plaintiffs' copyrights, both those currently existing and those later granted, and attorney's fees and costs in the amount of $2,207.35.  *See id.* at 2.

**B.    Statutory damages**

Section 504(c) of Title 17 of the United States Code provides, in pertinent part, that

> the copyright owner may elect, at any time before final judgment is
> rendered, to recover, instead of actual damages and profits, an
> award of statutory damages for all infringements involved in the

-4-

> action, with respect to any one work . . . in a sum of not less than
> $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1).

Moreover, where a defendant commits an infringement willfully, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000" per infringement. *See* 17 U.S.C. § 504(c)(2). In this context, "[w]illfulness . . . means that the defendant 'recklessly disregarded' the possibility that 'its conduct represented infringement.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001) (quotation and other citation omitted).

"[S]tatutory damages are not meant to be merely compensatory or restitutionary. . . . The statutory award is also meant 'to discourage wrongful conduct.' . . ." *Id.* at 113-14 (internal citation and quotation omitted). Moreover, the amount of statutory damages that the court awards should "further the Copyright Act's dual objectives of compensating copyright owners for past infringement and deterring future infringement." *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 403 (S.D.N.Y. 2002) (on default judgment awarding $30,000 statutory damages for a single infringement). Thus, factors that a court should consider in determining the amount of the award "include the 'expenses saved and profits reaped by the infringers,' the revenues lost by the plaintiff, the infringers' state of mind (wilful, knowing or merely innocent), the value of the copyright and the deterrent effect on both the defendant and others." *Id.* (quotation omitted). Finally, "'[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy [of discouraging wrongful conduct].'" *Id.* (quotation omitted).

Plaintiffs assert, among other things, that, because they have established that Defendant downloaded and distributed, with willful disregard for and indifference to Plaintiffs' rights, at least two of Plaintiffs' copyrighted motion pictures, they could request statutory damages up to $300,000 ($150,000 per infringement). However, they seek to recover only $6,000 in statutory damages because they believe that this amount is reasonable and justified under the circumstances of this case and the costs that they incurred in seeking to protect their exclusive rights under the copyright law. *See* Plaintiffs' Memorandum of Law at 3 (citation omitted).

In light of Plaintiffs' assertion that they expended $3,000 to $5,000 to develop the information and evidence necessary to bring this suit, together with Defendant's refusal to enter into settlement negotiations or to answer the complaint or otherwise appear, even after Plaintiffs warned her that she would be in default if she did not do so, Plaintiffs' request for $6,000 in statutory damages is reasonable. Accordingly, the Court awards Plaintiffs the full amount of statutory damages that they seek.

## C.    Permanent injunction

"As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (citations omitted). Moreover, Section 502 of the Copyright Act provides, in pertinent part, that any court may "grant . . . final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Finally, as one court noted, "[t]he weight of authority supports the extension of injunctive relief to future works." *Princeton Univ. Press v. Michigan Document Servs.*, 99 F.3d

1381, 1392 (6th Cir. 1996) (citations omitted); *see also Ortho-O-Vision, Inc. v. Home Box Office,*
*Inc.*, 474 F. Supp. 672, 686 (S.D.N.Y. 1979) (holding that "[w]here . . . liability has been
determined adversely to the infringer, there has been a history of continuing infringement and a
significant threat of future infringement remains, it would be inequitable to grant the copyright
owner partial summary judgment on the issue of liability without enjoining the infringement of
future works").

Since, by reason of her default, Defendant has admitted that she willfully infringed
Plaintiffs' copyrights and there is nothing in the record to suggest that Defendant would not
continue to violate Plaintiffs' copyrights, the Court grants Plaintiffs' request for a permanent
injunction that encompasses both their present and their future copyrighted motion pictures.

**D.      Attorney's fees and costs**

Section 505 of the Copyright Act provides that a court may, in its discretion, award full
costs to a prevailing party in a civil copyright action, including attorney's fees.  *See* 17 U.S.C.
§ 505.  Although "[a]n award of attorney's fees under Section 505 is discretionary, . . . any award
must be consistent with the purposes of the Copyright Act: compensation and deterrence."
*Getaped.com, Inc.*, 188 F. Supp. 2d at 406 (citation omitted).  The court should base its "decision
to award fees . . . on factors such as 'frivolousness, motivation, objective unreasonableness (both
in the factual and in the legal components of the case) and the need in particular circumstances to
advance considerations of compensation and deterrence.'"  *Id.* (quotation and other citation
omitted).

In this Circuit, prevailing parties "must support their motions [for attorney's fees] with

contemporaneous time records of the work performed." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, No. 03-CV-502, 2005 WL 670307, *7 (N.D.N.Y. Mar. 22, 2005) (citation omitted).  Moreover, to calculate an award of attorney's fees, the court must use a reasonable hourly rate, which is the rate that lawyers in the community, who have substantially similar experience and knowledge, charge for similar work.  *See id.* at *3.  This District recently concluded that the following hourly rates are reasonable: $210 for experienced attorneys, $150 for associates with more than four-years experience, $120 for associates with less than four-years experience, and $80 for paralegals.  *See id.* at *6.

Given Defendant's willful infringement of Plaintiffs' copyrights, the Court concludes that an award of attorney's fees and costs would serve the Copyright Act's dual purposes of compensation and deterrence.  Accordingly, the Court grants Plaintiffs' request for an award of attorney's fees and costs calculated as follows.

Although Plaintiffs did not submit any information about the qualifications and experience of the attorneys and paralegals who expended time in prosecuting this matter, the Court was able to find the necessary information for all but two of the individuals on Loeb & Loeb LLP's website and at www.martindale.com.  With regard to the paralegals and attorneys associated with Loeb & Loeb LLP, "TB Cummins" and "L Chen" are paralegals and "C Foster" is an attorney who received her JD in 2002.[1]  With regard to the attorneys associated with Hiscock & Barclay LLP, John D. Cook is an attorney who was admitted to the New York Bar in 2002,

---

[1] On the contemporaneous time records that Plaintiffs submitted for the work of the Loeb & Loeb attorneys, there are entries for individuals named "N Shah" and "T A Jones."  Neither of these individuals is listed on Loeb & Loeb's website.  Since it is Plaintiffs' responsibility to establish the qualifications and experience of their attorneys, the Court will not award attorney's fees for the work of the individuals it could not identify.

and Richard K. Hughes is a partner.  Therefore, the Court will calculate the attorney's fees using the following rates:

| Name | Hours Worked | Hourly Rate | Total |
|------|------|------|------|
| TB Cummins | .2 | $ 80 | $     16.00 |
| L Chen | 5.7 | $ 80 | $   456.00 |
| C Foster | 1.6 | $150 | $   240.00 |
| John Cook | 2 | $ 150 | $   300.00 |
| Richard Hughes | .9 | $ 210 | $   189.00 |
| **Total** | 10.4 | | **$ 1,201.00** |

Plaintiffs also incurred costs in the amount of **$403.01** for copying and postage as well as for service of process and the fee for filing the action in this Court.


### III. CONCLUSION

After carefully reviewing Plaintiffs' submissions, the relevant parts of the record, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Plaintiffs' motion for entry of a default judgment against Defendant is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' request for statutory damages in the amount of **$6,000** is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' request for an award of attorney's fees and costs is **GRANTED** in the amount of **$1,604.01**; and the Court further

**ORDERS** that Plaintiffs' request for a permanent injunction is **GRANTED** according to the following terms:

>  Defendant shall and hereby is enjoined from directly or indirectly infringing Plaintiffs' rights under federal or state law in the following copyrighted motion pictures:
>
>  *Guess Who*;
>  *Boogeyman*; and
>
>  any other motion picture, whether now in existence or later created, that is owned or controlled by Plaintiffs (or any parent, subsidiary, or affiliate of Plaintiffs) (the "Plaintiffs' Motion Pictures"), including without limitation by using the Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiffs' Motion Pictures, to distribute (i.e., upload) any of Plaintiffs' Motion Pictures, or to make any of Plaintiffs' Motion Pictures available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiffs. Defendant also will destroy all copies of Plaintiffs' Motion Pictures that Defendant has downloaded onto any computer hard drive or server without Plaintiffs' authorization and shall destroy all copies of those downloaded recordings transferred onto any physical medium or device in Defendant's possession, custody or control.

**IT IS SO ORDERED.**

Dated: February 26, 2007
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

-10-